U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET





**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed March 8, 2007                                   **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BROOK MAYS MUSIC COMPANY, | § | CASE NO. 06-32816-SGJ-11 |
| DEBTOR. | § | |
| | § | |
| PRINCIPAL LIFE INSURANCE COMPANY | § | |
| and PETULA ASSOCIATES, LTD., | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3508 |
| | § | |
| JPMORGAN CHASE BANK, N.A. and | § | |
| THE RECOVERY GROUP, INC., | § | |
| | § | |
| DEFENDANTS. | § | |

**MEMORANDUM OPINION AND ORDER DENYING
MOTION OF PLAINTIFFS TO REMAND AND ABSTAIN**

**I.
INTRODUCTION**

Principal Life Insurance Company and Petula Associates, Ltd., the Plaintiffs, move to remand this adversary proceeding to the 116th Judicial District Court of Dallas County, Texas (hereinafter, the "State Court"). The Defendants oppose the

motion. The court conducted a hearing on this matter on December 13, 2006.

## II.
### RELEVANT FACTS

1. Brook Mays Music Company (the "Debtor" or "Brook Mays") filed a voluntary petition under chapter 11 of the United States Code (the "Bankruptcy Code") on July 11, 2006 (the "Petition Date"), initiating Case No. 06-32816-SGJ-11. Brook Mays' chapter 11 case is still pending in this court.

2. Thereafter, on October 4, 2006, the Plaintiffs filed an action in the State Court styled *Principal Life Insurance Company and Petula Associates, Ltd., Plaintiffs, vs. JPMorgan Chase Bank, N.A. and The Recovery Group, Inc., Defendants,* Civil Action No. 06-10316 (hereinafter, "State Court Action").

3. The facts in the State Court Action involve prepetition conduct relating to Brook Mays, but Brook Mays is not a named party in the State Court Action.

4. The only Defendants named in the State Court Action are JPMorgan Chase Bank, N.A. ("Chase") and The Recovery Group, Inc. ("TRG"). Chase is named in connection with alleged acts in which it engaged in its capacity as a lender to Brook Mays and as agent for the additional lenders GE Commercial Distribution Finance Corporation ("GECC") and Siemens Financial Services, Inc. ("Siemens," and collectively with Chase and GECC, the "Secured

-2-

Lenders"). TRG is named in connection with alleged acts in which it engaged in its capacity as financial advisor to Brook Mays.

5. Chase loaned Brook Mays millions of dollars on a secured basis prepetition, pursuant to that certain Credit Agreement dated December 22, 2004, as amended by the First Amendment to Credit Agreement dated March 31, 2006, and as supplemented by a Forbearance Agreement dated March 31, 2006 (as amended and supplemented from time to time, the "Credit Agreement"). Additionally, pursuant to a Final Agreed Order Authorizing Limited Use of Cash Collateral, Obtaining Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders (as amended from time, the "DIP Order"), entered July 31, 2006, Chase extended further significant credit to Brook Mays postpetition, with bankruptcy court approval after notice to creditors.

6. In the State Court Action, the Plaintiffs assert that, on December 15, 2006, less than one year before Brook Mays filed bankruptcy, Petula Associates, Ltd. ("Petula"), as landlord, entered into a ninety-one month lease ("Lease") with Brook Mays, as tenant, for certain real property consisting of 121,766 square fee of warehouse space in Dallas, Texas. Petula asserts that it improved the warehouse space to suit Brook Mays' needs prior to Brook Mays moving into the premises, expending over $600,000. Petula further asserts that Brook Mays was contractually required

-3-

to obtain an irrevocable letter of credit ("L/C") in the initial amount of $406,000 as security for Brook Mays' obligations under the Lease. Petula designated Principal Life Insurance Company ("Principal") to be the beneficiary of the L/C, since Principal performed treasury functions for Petula.

7. Apparently, Brook Mays submitted to Chase an application for the L/C on December 15, 2005, and Petula proceeded to make lease improvements. Then, in May 2006, the Plaintiffs were informed by Brook Mays that the application for L/C had been withdrawn and the L/C would not be issued. The Plaintiffs allege that Chase and TRG, the latter of which had become the financial advisor to Brook Mays in January 2006, singularly or in concert, delayed the issuance of the L/C, eventually advising Brook Mays that it should withdraw the L/C application. The Plaintiffs assert that they have been damaged because Brook Mays took possession of the leased premises in June 2006, defaulted under the Lease shortly thereafter, and the Plaintiffs should have had an L/C to look to for security but did not—allegedly due to wrongful actions of Chase and TRG. Chase allegedly directly represented to Plaintiffs that it intended to issue an L/C in the amount of $406,000.

8. Plaintiffs assert the following causes of action against Chase in the State Court Action: promissory estoppel, negligence (*i.e.,* breach of a duty of reasonable care to Plaintiffs),

-4-

fraudulent failure to disclose (the financial condition of Brook Mays), and negligent misrepresentation.

9. Plaintiffs assert the following causes of action against both Chase and TRG in the State Court Action: tortious interference with contract and prospective relations (*i.e.,* the warehouse lease and the intended L/C agreement), gross negligence, malice, and fraud.

10. Plaintiffs seek actual damages of $406,000, plus attorney's fees and exemplary damages. Plaintiffs seek a jury trial.

11. The Defendants jointly and timely filed a Notice of Removal of all claims asserted in the State Court Action on November 3, 2006, pursuant to 28 U.S.C. §§ 1334 and 1452 and Federal Rule of Bankruptcy Procedure 9027.[1]

12. The questions now before the court are whether: (a) removal was proper in the first instance (*i.e.,* whether this court can properly exercise subject matter jurisdiction over the claims); and, if so (b) *should* the court exercise subject matter

---

[1] The Defendants also asserted that removal is proper under 28 U.S.C. §§ 1332 and 1441, and reserved all rights in respect thereto. Specifically, Defendants submit that diversity of citizenship jurisdiction exists, thus a federal district court would be able to assert jurisdiction over the State Court Action, since all of the parties' principal places of business and states of incorporation are each different from the other parties (according to the Defendants, Chase's principal place of business is either New York or Ohio; TRG was formed under the laws of Massachusetts and is headquartered there; and Plaintiffs are both Iowa corporations). ***Plaintiffs have admitted that diversity of citizenship exists in the State Court Action.***

-5-

over the claims or remand them to the State Court.

### III.
### CONCLUSIONS OF LAW

#### A.  Bankruptcy Subject Matter Jurisdiction – Does it Exist Here?

Bankruptcy subject matter exists (but, of course, is not exclusive) with regard to civil proceedings that are "arising under" the Bankruptcy Code, or "arising in" bankruptcy cases, or are "related to" bankruptcy cases.  28 U.S.C. § 1334(b).  And removal of claims, pursuant to 28 U.S.C. § 1452(a) (hereinafter, the "Bankruptcy Removal Statute"), is only, in the first instance, proper if the district court (and by referral the bankruptcy court) would have bankruptcy subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1334(b).

Thus, the first matter this court must address is whether bankruptcy subject matter jurisdiction indeed exists with regard to the claims asserted in the State Court Action—in other words, do the claims "arise under" the Bankruptcy Code, "arise in" the Brook Mays case, or are they "related to" the Brook Mays case? "Arising under" matters (*i.e.,* those that "invoke a substantive right provided by title 11")[2] and "arising in" matters (*i.e.,* matters that, by their nature, could only arise in the context of a bankruptcy case and concern the administration of the estate)[3]

---

[2] *See Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987).

[3] *See Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159, 162 (7th Cir. 1994).  *See also* 1 COLLIER ON BANKR. ¶ 3.01 [4][c][iv] (15th ed. rev.

and have been construed in bankruptcy jurisprudence to be
bankruptcy "core" matters.  *E.g., EOP-Colannade of Dallas L.P. v.
Faulkner (In re Stonebridge Technologies, Inc.),* 430 F.3d 260
(5th Cir. 2005); *U.S. Brass Corp. v. Travelers Ins. Group, Inc.
(In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002) (and
authority cited therein).[4]  "Related to" matters (*i.e.,* those,
the outcome of which could "conceivably have an effect on the
estate being administered in bankruptcy") have been construed in
bankruptcy jurisprudence to be bankruptcy "non-core" matters.
*E.g., Wood,* 825 F.2d at 93.  The significance of "core"/"non-
core" is that this court may both preside over and enter final,
binding orders in "core" matters.  However, in "non-core"
matters, this court may only preside over the matters and make

_____

2006) (arising in matters would include such things as requests for
turnover of property of the estate; determinations of the validity of
liens; contempt matters; motions to elect trustees; actions to recover
postpetition accounts).  *See also Southmark Corp. v. Coopers & Lybrand
(In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999), *cert.
denied*, 527 U.S. 1004 (1999) (action based on state created rights,
that, had there been no bankruptcy, could have proceeded in state
court, was noncore).

   [4] There is, of course, also a list of fifteen or so categories of
"core" matters found at 28 U.S.C. § 157(b)(2)(A)-(O), including broad
"catch-all" categories such as "matters concerning the administration
of the estate"  and "other proceedings affecting the liquidation of
the assets of the estate or the adjustment of the debtor-creditor . .
. relationship."  28 U.S.C. § 157(b)(2)(A) & (O).  However, courts
have cautioned that suits that do not depend on bankruptcy laws for
their existence do not arise as part of the process of allowance and
disallowance of claims and are not integral to the restructuring of
debtor-creditor relations, but rather are quintessentially suits at
common law, and should not be construed to be "core" matters simply
because the administration of the estate might somehow be vaguely or
remotely interrelated.  *See, e.g., In re Nu Van Tech., Inc.*, 2003
Bankr. LEXIS 1331 (Bankr. N.D. Tex. 2003).

findings and conclusions as a recommendation to the district court, and the district court must enter the final order (with the district court having the power to review the findings and conclusions de novo)—unless all parties consent to the bankruptcy court issuing a final, binding order.  28 U.S.C. § 157(c).  Thus, in the case of both "core" and "non-core" matters, there is bankruptcy subject matter jurisdiction.  However, there are limitations on the *authority* of the bankruptcy court (*i.e., the unit of the district court to which bankruptcy matters are referred*)[5] in the context of "non-core" matters.

The Defendants, who argue that the claims in the State Court Action present "arising in"/"core" claims or, alternatively, are at least "related to"/"non-core" claims, allege that there are several reasons that removal to (and subject matter jurisdiction in) the bankruptcy court is proper.  Their reasons mentioned are as follows:

(a)  <u>DIP Order Release.</u>  The Plaintiffs are asserting damages that arise out of or are related to the prepetition Credit Agreement—that is, the alleged failure of Chase to issue the L/C.  The DIP Order contained language barring or otherwise releasing claims relating to the Credit Agreement.  Paragraphs 84-86 of the DIP Order.  This court retained jurisdiction to enforce the terms of the DIP Order.  Thus this dispute with the Plaintiffs "arises in" a bankruptcy case.

(b)  <u>Indemnification.</u>  The Defendants allege that any liability imposed on them in connection with the State Court Action will give rise to indemnification claims back against the Debtor/the estate.  Thus, while the Debtor is not a party in the

---

[5] 28 U.S.C. § 151.

State Court Action, there would be an effect on the Debtor's estate, if the Plaintiffs prevail in the action and are allowed claims against the Defendants. Specifically, in the Credit Agreement (in paragraph 10.10 thereof, entitled "Indemnification") Brook Mays agreed to indemnify the Secured Lenders against any claims or liabilities to which they might become subjected resulting from actual or proposed use by Brook Mays of proceeds of loans by the Secured Lenders (including letters of credit). Also, in the Forbearance Agreement, there was a similar paragraph 6.5 entitled "Indemnification," supplementing the Credit Agreement's indemnification provisions, with further language obligating Brook Mays to indemnify the Secured Lenders in connection with claims arising out of or from or related to the underlying loan documents and imposing on Brook Mays a duty to defend any such claims at its own expense, at the Secured Lenders' request. Finally, the DIP Credit Agreement entered into postpetition in connection with the DIP Order contained a ratification by Brook Mays of the terms of the Credit Agreement (paragraph 4), along with an additional "Indemnification" paragraph (paragraph 8) in which Brook Mays indemnified the Secured Lenders for claims relating to the postpetition loans made by the Secured Lenders.

Similarly, TRG alleges that it has certain indemnification rights against the Debtor. Prepetition, Brook Mays and TRG entered into a Retention Agreement (herein so called) setting forth the terms of TRG's engagement as financial advisor for Brook Mays. The Retention Agreement contained Brook Mays' agreement to indemnify TRG for any claims or liabilities incurred, related to or arising out of or in connection with TRG's engagement for Brook Mays, including TRG's expenses of litigation; provided, however, that Brook Mays is not obligated to indemnify TRG for any claims finally determined to be due to TRG's bad faith, willful misconduct or gross negligence.

(c) Debtor as Necessary Party. TRG has asserted that the Debtor is a necessary party to the State Court Action since any alleged torts committed by TRG against Plaintiffs would have been due to decisions made by Brook Mays through its management. TRG argues that if the Debtor is properly brought into the State Court Action, then the proceeding will then become "related to" or should be deemed "arising in" the case, if the dispute is not already in this category.

(d) Petula's Invoking of the Equitable Jurisdiction of the Bankruptcy Court. Petula has participated extensively in the Brook Mays bankruptcy case. Specifically, it has filed no less than nine pleadings asserting contractual rights and remedies

relating to the Lease and objecting to the DIP Order.  The
Defendants argue that Petula has therefore invoked the
jurisdiction of the bankruptcy court with respect to the Lease,
DIP Order and Credit Agreement.

On November 22, 2006, the Plaintiffs filed their Motion to

Remand and Abstain, which is now before the court.  As grounds

for remand, pursuant to 28 U.S.C. § 1452(b), the Plaintiffs argue

as follows:

(a)  <u>DIP Order Release.</u>  The claims alleged in the
State Court Action do not implicate the DIP Order or Credit
Agreement in any way and, thus, the claims do not "arise in" the
bankruptcy case for that reason and are not precluded by the DIP
Order.  The Plaintiffs argue that they are not challenging the
validity of the loan documents or causes of action arising
thereunder, but, rather, are complaining of representations and
actions in connection with the Lease transaction.  Such complaint
makes claims such as estoppel, negligence, misrepresentation, and
tortious interference, which are "quintessential state causes of
action that involve the failure to abide by legal duties
recognized by Texas common law owed by Chase and TRG to Principal
and Petula."

(b)  <u>Indemnification.</u>  The mere presence of
indemnifications does not indicate that the removed action could
conceivably have any effect on the estate.  Even if the
indemnifications are conceivable in the future, they have not yet
accrued.  They would require a separate lawsuit that may or may
not have an impact on the estate.  Such "speculative and
theoretical claims" should not be deemed sufficient to create
"related to" bankruptcy subject matter jurisdiction (citing
*Pacor, Inc. v. Higgins,* 743 F.2d 984, 995 (3rd Cir. 1984);
*Transamerica Fin. Life Ins. Co. v. Merrill Lynch & Co., Inc.,* 302
B.R. 620, 626 (D. Iowa 2003)).  As further support for the idea
of indemnification claims being speculative and theoretical,
Plaintiffs point to the fact that it has been represented many
times during the Brook Mays case that there will be no
distribution to unsecured creditors in this case—the Secured
Lenders are undersecured and have a lien on all of the assets of
the Debtor and the time has passed to challenge their liens.
Finally, the Plaintiffs question whether the indemnities would
even apply to tortious conduct such as has been alleged by the
Plaintiffs.

(c) <u>Debtor as Necessary Party.</u> The Plaintiffs have not specifically responded to this issue.

(d) <u>Petula's Invoking of the Equitable Jurisdiction of the Bankruptcy Court.</u> Petula denies that it has somehow invoked the equitable jurisdiction of the bankruptcy court with regard to this litigation, simply because it opposed certain motions during the bankruptcy case so far.

Finally, the Plaintiffs further argue that the claims asserted in the State Court Action are neither "core" nor "non-core" but, to the extent "non-core," Plaintiffs do not consent to this court issuing final orders.

<u>B. Bankruptcy Subject Matter Jurisdiction Does Indeed Exist, Although it is "Non-Core"/"Related to" Subject Matter Jurisdiction.</u>

This court holds that bankruptcy subject matter does indeed exist with regard to the State Court Action. The court determines that the matters presented are "non-core"/"related to" matters. Specifically, the jurisdictional basis here is the contingent indemnification claims that the Defendants have against the Debtor, as a result of the claims now being asserted against the Defendants. Such indemnification claims are not as amorphous, speculative, or meaningless as Plaintiffs suggest.

<u>1. First, There is No "Arising in" Subject Matter Jurisdiction by Virtue of the DIP Order.</u>

But taking first the other jurisdictional arguments made by Defendants, the court is not persuaded that there is "arising in" jurisdiction here by virtue of the DIP Order release language that allegedly precludes the causes of action being asserted in

-11-

the State Court Action.  It may very well be, at the end of the day, that the Defendants have a valid affirmative defense that the Plaintiffs' claims are barred by certain release language in the DIP Order.  However, the court agrees with the Plaintiffs that the claims asserted in the State Law Action are quintessentially state law claims sounding in tort and contract. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co. (In re Northern Pipeline Constr. Co.)*, 458 U.S. 50, 71 (1982) (the adjudication of state-created private rights is not at the core of the federal bankruptcy power).  The removed claims are not claims that concern the administration of the Brook Mays bankruptcy estate; nor are they claims that would be incapable of existence absent the bankruptcy case.  And while a court always has the inherent power to enforce its own orders, this cannot serve as an independent basis for federal jurisdiction.  *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S. Ct. 921 (1998) (where defendants removed to federal court a state court action that on its face appeared to involve state law property rights, on the grounds that the action was precluded by a prior bankruptcy court order, Court held that claim preclusion by reason of a prior federal judgment is a defensive plea that provides no independent basis for federal question removal).  Seemingly anomalous, perhaps, is case law in this circuit that instructs that, when there is a state court action with federal

-12-

defenses implicated (*i.e.,* the defense of claim preclusion because of a prior bankruptcy court order), the bankruptcy court may simultaneously entertain a declaratory judgment action that seeks for the bankruptcy court to construe that prior bankruptcy court order, and *the declaratory judgment action* (as opposed to the state court action) would raise a "core" matter over which the bankruptcy court has subject matter jurisdiction. *Insurance Co. of N. America v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re National Gypsum Co.)*, 118 F.3d 1056, 1062-64 (5th Cir. 1997). Strange as this may seem (and as much as an elevation of form over substance as this may seem), the fact is that higher courts have been very clear that a *federal defense* cannot itself create subject matter jurisdiction where subject matter jurisdiction does not otherwise exist. *Rivet,* 522 U.S. 470. The fact is that Plaintiffs' claims of promissory estoppel, negligence, fraudulent failure to disclose, negligent misrepresentation, and tortious interference are state common law claims. They are not claims that could not exist independent of a bankruptcy case.

    2. The Misfire with the Argument of "Plaintiffs Submitted to the Equitable Jurisdiction of the Bankruptcy Court."

    Taking another one of Defendants' arguments out-of-order, this court rules that the argument that "Plaintiffs submitted to the equitable jurisdiction of the bankruptcy court" is a non

sequitur.  Subject matter jurisdiction, in contrast to personal jurisdiction, is not something that can vest through a party's actions or behavior.  A party cannot submit or consent to the jurisdiction of the bankruptcy court by participation in the bankruptcy case.  General participation of a party in a bankruptcy case has never been the lynchpin for subject matter jurisdiction.  *Orquera v. Ashcroft*, 357 F.3d 413, 416 (4th Cir. 2003), *citing Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 56 U.S. 694, 104 S. Ct. 2099 (1982).

The Defendants seem to be misconstruing the meaning of *Granfinanciera* and its progeny.  *See Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782 (1989); *Lagenkamp v. Culp,* 498 U.S. 42, 111 S. Ct. 330 (1990).  *Granfinanciera* stands for the proposition that a party's participation in a bankruptcy case, particularly by filing a proof of claim, can transform a matter that would ordinarily be legal in nature and would give rise to a Seventh Amendment jury trial right into a matter that is equitable in nature (*i.e.,* a matter involving claim allowance/disallowance) *so that the jury trial right is lost*.  However, this has nothing to do with "core"/"noncore" and the scope of bankruptcy subject matter jurisdiction under 28 U.S.C. § 1334(b).  *See discussion in In re Jensen*, 946 F.2d 369, 373 (5th Cir. 1991).  In *Jensen*, the Fifth Circuit considered whether a chapter 11 debtor had effectively subjected his prepetition,

-14-

state-law-in-nature claims to the bankruptcy court's equitable power when he filed his bankruptcy petition. The Fifth Circuit concluded unequivocally no, stating that "the petition for bankruptcy itself has nothing to do with whether the bankruptcy court can exercise equitable jurisdiction over a debtor's prepetition claims. Its only effect is to pass ownership and control of the claims to the estate. . . . The claims belong to the estate after the petition is filed, but that does not mean the claims are then within the court's equitable jurisdiction or that they somehow became equitable in nature." The court in *Jensen* went on to hold that the filing of the bankruptcy petition also did not operate to waive the debtor's jury trial right. *Id.* at 374. The Fifth Circuit makes clear in *Jensen* that: (a) the nature of the claims determines subject matter jurisdiction (not the actions of a party); (b) whether the claims (and remedies sought) are legal or equitable dictates jury trial rights; and (c) a party's actions in a bankruptcy case (such as filing a proof of claim) can *sometimes* morph a legal matter into an equitable matter, eviscerating jury trial rights, but not necessarily always.

    3. Why "Related to" Bankruptcy Subject Matter Jurisdiction Exists: The Indemnities.

As earlier previewed, the court has determined that the claims alleged in the State Court Action are "non-core"/"related

-15-

to" matters.  Specifically, the jurisdictional basis here is the contingent indemnification claims that the Defendants have against the Debtor (pursuant to the Credit Agreement, the Forbearance Agreement, DIP Order, and Retention Agreement), as a result of the claims now being asserted against the Defendants.

One of the Fifth Circuit's most recent occasions to re-visit the "related to" standard of 28 U.S.C. § 1334(b) and the oft-quoted *Wood* opinion was in *EOP-Colonnade of Dallas L.P. v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260 (5th Cir. 2005).  *Stonebridge* involved the following facts:  the liquidating trustee under a confirmed chapter 11 plan sued a landlord in connection with the landlord's draw on a letter of credit that was provided as security in connection with a real property lease that debtor rejected during its bankruptcy case. The trustee asserted that the landlord breached the lease and made certain misrepresentations to the issuing bank by prematurely drawing on the letter of credit (resulting in the landlord being paid more than Section 502(b)(6) contemplates). The bank that issued the letter of credit had a certificate of deposit from the debtor which secured the bank's reimbursement claim it had against the debtor, by virtue of the letter of credit having been drawn.  When the bank filed a motion to lift stay in order to cash in the certificate of deposit and apply it to its claim, the trustee reached a compromise with the bank

whereby the trustee was assigned the bank's claim against the landlord for alleged misrepresentations to the bank. Then the trustee filed an adversary proceeding in the bankruptcy court alleging both: (a) direct claims the estate had against the landlord for alleged breaches of the lease between the debtor-tenant and landlord; and (b) the assigned claims that the bank had against the landlord for alleged misrepresentations in connection with the letter of credit agreement.

The Fifth Circuit raised sua sponte for the first time the issue of subject matter jurisdiction. The Fifth Circuit acknowledged that the direct claims of the estate that the liquidating trustee was asserting were not troubling from a jurisdictional standpoint. The lease had been a contract or property of the estate and the claims of the estate for alleged breaches were property of the estate. Any recovery on the claims would go directly to the estate for damage done to the estate. However, jurisdiction was described as "less obvious" with regard to the claims that the trustee had been assigned from the bank for the landlord's alleged misrepresentations to the bank. *Id.* at 266. The court opined that assignment of the claims to the estate alone was not sufficient to create bankruptcy jurisdiction. The court went on to opine that "[u]pon closer review, however, additional effects on the estate are evident: a claim by the Bank against [the landlord] affects the need for the

Bank to seek reimbursement from Stonebridge's bankruptcy estate. [The landlord's] draw on the Letter of Credit triggered [the debtor's] contractual responsibility to reimburse the Bank for the draw on the Letter of Credit.  . . .If the Bank is successful against [the landlord] on its negligent misrepresentation claims, the need for reimbursement from [the bankruptcy] estate is alleviated." *Id.* at 266-267.  Accordingly, the court held that the negligent misrepresentation claims of the bank against the landlord fell within bankruptcy jurisdiction.[6]  The court noted other cases that involved litigation between third parties that have been found to have an effect on the administration of the bankruptcy estate, including suits by creditors against guarantors and a suit by creditors of a debtor against defendants that allegedly perpetrated a fraud.  *Id.* at 267 (*citing* 3 COLLIER ON BANKRUPTCY ¶ 3.01 (15th ed. rev. 2005)).

This court believes *Stonebridge* provides the guiding principle for this case.  We have an extremely analogous situation here.  Here, we have landlord claims against the Secured Lenders and TRG (third parties versus third parties). Here, like in *Stonebridge*, the claims mostly or entirely sound in state law (negligent misrepresentation and other torts).  And

---

[6] The Fifth Circuit also found that in the unique situation of *Stonebridge*, the bank claims against the landlord were "core," since the application of the Section 502(b)(6) damages cap was significantly involved in the litigation.

here, similar to *Stonebridge*, there is a conceivable effect on
the estate, since if the Plaintiffs prevail against either the
Secured Lenders or TRG, the Secured Lenders and TRG will most
likely have claims back against the estate by virtue of their
indemnification agreements with the Debtor.

The Plaintiffs have argued that such indemnification claims
are amorphous, speculative, or meaningless because Brook Mays
appears by all accounts to be an administratively insolvent
estate and any indemnification claims that the Secured Lenders
and TRG would have would likely receive zero recovery (and,
additionally, there would be no impact on any unsecured creditors
because, whether or not indemnification claims arise against the
estate, there will be no recovery to the unsecured creditors).
Although this argument, at first blush, has some appeal, it
fails.  It fails for two reasons.  First, this case is not over.
While a recovery to unsecured creditors appears highly unlikely,
the fat lady has not yet sung.  Second, there most likely would
indeed be some impact on the estate if the Plaintiffs are awarded
a judgment against the Secured Lenders and the Secured Lenders
assert indemnification claims back against the estate.  Why?
Because there are at least the following unencumbered assets in
this estate:  chapter 5 avoidance actions.  Additionally, the DIP
Order provides that deficiency claims of the Secured Lender will
be granted Section 507 super priority administrative claim status

in the case. Thus, it appears to this court that the
"conceivable effect on the estate" of the State Court Claims is
that if Plaintiffs win, then the Secured Lenders and TRG will
make claims back against the estate (which claims are now
prepetition, contingent, unliquidated claims), and those claims
will share in any recovery that unsecured creditors might
otherwise realize from the unencumbered chapter 5 causes of
action.

    4. <u>Debtor as a "Necessary Party."</u>

TRG has made the additional argument of why subject matter
jurisdiction exists with regard to the State Court Action: the
Debtor is a necessary party in the litigation and Plaintiffs have
intentionally omitted Debtor in the hopes of depriving the
bankruptcy court of subject matter jurisdiction. This court
agrees that the Debtor is likely ultimately going to be a
necessary party in this litigation. Fed. R. Bankr. P. 7019. It
seems at least plausible, if not likely, that Plaintiffs have
artfully drafted their complaint to intentionally omit the
Debtor, so as to attempt to defeat the possibility of bankruptcy
subject matter jurisdiction.[7] However, whether Debtor is added
in or not, subject matter jurisdiction exists because of the

---

[7] *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475-76 (1998)
(if a plaintiff "artfully pleads" his claim in order to defeat removal by
omitting to plead necessary federal questions, then a court may uphold removal
even though no federal question appears on the face of the complaint).

indemnification claims discussed above.

C.  The Inapplicability of the "Well Pleaded Complaint" Doctrine.

The Court believes it must address one other bankruptcy subject matter jurisdictional argument.  Plaintiffs take the position that removal, based upon 28 U.S.C. § 1334, is subject to the well pleaded complaint test of *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S. Ct. 929 (1998).  The Plaintiffs basically argue that there is no bankruptcy subject matter jurisdiction with regard to the State Court Action at all, because of the "well pleaded complaint rule."

The well pleaded complaint rule is a judicially created pleading rule, dating back to at least 1877, when the Supreme Court articulated it in *Gold Washing & Water Co. v. Keys*, 96 U.S. 199 (1877) (in addressing a predecessor statute to 28 U.S.C. § 1331 that defined federal question jurisdiction then).[8]  The well pleaded complaint rule requires that a federal question appear on the face of a well-pleaded complaint in order for federal question jurisdiction to lie in an action.  *See Rivet*, 522 U.S. at 475; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The rule, from the very beginning, has always been articulated as being for the purpose of patrolling the gates of

---

[8] The statute 28 U.S.C. § 1331 is, of course, the current, general "federal question" jurisdictional statute, defining "arising under" jurisdiction in the federal district courts as jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."

the federal courts, which are intended to be courts of limited jurisdiction. The rule has developed specifically in the context of federal "arising under" jurisdiction—so that if a plaintiff pleads nothing on the face of his complaint that arises under federal law, then it does not matter if there are federal defenses implicated by the action. What governs is the face of the plaintiff's complaint for purposes of deciding whether the action "arises under" federal law.

However, the Supreme Court has specifically held that the well pleaded complaint doctrine only applies with regard to federal question "arising under" jurisdiction.[9] *American Red Cross v. S.G.,* 505 U.S. 247, 258 (1992); *see also Amoco Production Co. v. Sea Robbin Pipeline Co.*, 844 F.2d 1202, 1205

---

[9] Note that there are other federal jurisdictional statutes concerning specific areas of federal law that have similar "arising under" language as 28 U.S.C. § 1331, and courts have also applied the well pleaded complaint rule in connection with such statutes. *See, e.g.*, *Holmes Group, Inc. v. Vornado Air Circulation*, 535 U.S. 826, 829-30 (2002) ("Section 1338(a) uses the same operative language as 28 U.S.C. § 1331, the statute conferring general federal-question jurisdiction, which gives the district courts 'original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States' (emphasis added). We said in [*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988)], that '[l]inguistic consistency' requires us to apply the same test to determine whether a case arises under [28 U.S.C.] § 1338 as under [28 U.S.C.] § 1331. The well-pleaded-complaint rule has long governed whether a case 'arises under' federal law for the purposes of [28 U.S.C.] § 1331. *** As 'appropriately adapted to [28 U.S.C.] § 1338(a),' the well-pleaded-complaint rule provides that whether a case 'arises under' patent law 'must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration . . . .'"); *Richardson v. United Steelworkers of America*, 864 F.2d 1162, 1168 (5th Cir. 1989) (similarly construing the "arising under" language of 28 U.S.C. § 1337, dealing with commerce and antitrust disputes).

-22-

(5th Cir. 1988); *Cameron Offshore Boats, Inc. v. Alpine Ocean Seismic Surveys,* 862 F. Supp. 1578 (D. La. 1994).  Nevertheless, many courts have either blindly applied the well pleading complaint rule in the context of a bankruptcy jurisdiction/removal, pursuant to 28 U.S.C. §§ 1334/1452, or have done so with a less-than-satisfying analysis.[10]

This court holds that the well pleaded complaint rule, actually, has very limited significance in a bankruptcy removal context.  Why?  Because the well pleaded complaint rule only makes sense (or has relevance) in connection with one prong of 28 U.S.C. § 1334:  the "arising under" prong.  In other words, the well pleaded complaint rule is only instructional when determining "arising under" jurisdiction in bankruptcy.  Section 1334 is written in the disjunctive – using "or" instead of "and" – and, therefore, bankruptcy jurisdiction can be founded on a matter "arising under" the Bankruptcy Code or "arising in" a bankruptcy case or "related to" a bankruptcy case.  Bankruptcy jurisdiction extends farther than 28 U.S.C. § 1331 and other "arising under" jurisdictional statutes.  Thus, the well pleaded complaint rule is not the end of the analysis under section 1334, but, rather, the *beginning* of it.  The rule helps the court

---

[10] Note that the oft-quoted and relied-upon *Rivet* case, though involving a prior bankruptcy, did not involve 28 U.S.C. §§ 1334 and 1452, but, rather, it involved removal pursuant to 28 U.S.C. §§ 1331 and 1441(a).

answer the question, "Does this matter arise under Title 11?" In other words, are there questions arising under Title 11 presented in the four corners of the complaint? If the answer to that question is "no," then a bankruptcy court still must determine if the matter "arises in" a bankruptcy case or is "related to" a bankruptcy case in order to complete the court's jurisdictional inquiry. This is the only sensible way to give effect to all of the language in section 1334. "[S]tatutes should be read so far as possible to give independent effect to all of their provisions." *Babbit v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 724 (1995). To rely on the well pleaded complaint rule alone in interpreting section 1334 reads the "arising in" and "related to" provisions out of section 1334. This cannot be what any of the courts seriously intended to do in their application of the well pleaded complaint rule to section 1334. Moreover, returning to the test articulated by the Fifth Circuit and other courts of appeal for "related to" jurisdiction (*i.e.,* whether the *outcome* of the action could conceivably have an effect or impact on the estate being administered),[11] it is clear that the "related to" test is one that focuses on the potential outcome or end result of the litigation – rather than on the face of the complaint. It is intended to have a much

---

[11] *Accord Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

broader jurisdictional reach.  It is intended to rope a larger
universe of disputes into the district/bankruptcy courts,[12] with
concerns for comity appropriately preserved and embodied in both
28 U.S.C. § 1452 (b) (equitable remand mechanism) and 28 U.S.C. §
1334(c) (abstention mechanisms).

Other courts have recently expressed similar views.  For
instance, *In re Wellington Apartment, LLC*, 353 B.R. 465 (E.D. Va.
2006) uses the well pleaded complaint rule in its discussion of
"arising under" jurisdiction, but then goes on to separately
address "arising in" and "related to" jurisdiction, which is,
arguably, at least, a tacit recognition that the well pleaded
complaint rule and "arising under" jurisdiction is not the end of
the inquiry in the bankruptcy context.  *Contra Glasstex, Inc. v.
Arch Aluminum & Glass Co., Inc. (In re Polvado),* 2006 WL 2993333,
*2 (Bankr. S.D. Tex. 2006) (Isgur, J.) (finding that the
complaint, on its face, presented no allegations that recovery
for the plaintiff, the alleged alter ego of the debtor, Mr.
Polvado, would in any way influence the bankruptcy estate of the

---

[12] The legislative history of 28 U.S.C. § 1334 indicates that the
phrase "arising under," "arising in," or "related to" was meant "not
to distinguish between different matters, but to identify collectively
a broad range of matters subject to bankruptcy jurisdiction of federal
courts.  Congress was concerned with the inefficiencies of piecemeal
adjudication of matters affecting the administration of bankruptcies
and intended to give federal courts the power to adjudicate all
matters having an effect on bankruptcy." *Bank of Lafayette v. Baudoin
(In re Baudoin)*, 981 F.2d 736, 740 (5th Cir. 1993).  The legislative
history is found at S. Rep. No. 989, 95th Cong., 2d Sess., 153-54
(1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5939-40.

debtor)[13]; *Conseco, Inc. v. Adams (In re Conseco, Inc.)*, 318 B.R. 425, 431 n.1 (Bankr. N.D. Ill. 2004) (in a post-confirmation context, reorganized debtor brought adversary seeking recovery from participants in prepetition loan program based on state law causes of action, the court applied well pleaded complaint rule and found no "related to" jurisdiction).

In summary, this court declines to hold that the well pleaded complaint rule negates bankruptcy subject matter jurisdiction in the case at bar. The reality is that, though there is no federal question articulated in the four corners of the Plaintiffs' complaint, the Plaintiffs' claims present issues, the *outcome of which* could conceivably have an effect on the bankruptcy estate. *Wood,* 825 F.2d at 93.

D.  Having Determined that Bankruptcy Subject Matter Exists, Should this Court Nevertheless Remand on Equitable Grounds, Pursuant to 28 U.S.C. § 1452(b), or Discretionarily  Abstain, Pursuant to 28 U.S.C. § 1334(c)(1)?

Having found that bankruptcy subject matter jurisdiction exists, the court finally turns to whether it should equitably remand or discretionarily abstain pursuant to 28 U.S.C. § 1452(b) or 28 U.S.C. § 1334(c)(1), respectively. As mentioned early on, the Plaintiffs have conceded that there is diversity jurisdiction

---

[13] Judge Isgur's approach seems like the only possible reasonable way to stretch the well-pleaded complaint rule beyond an application to traditional "arising under" jurisdiction – by asking the question "does the face of the complaint present a question that arises in or is related to a bankruptcy case?"

in the State Court Action. Therefore, there is no reason to even consider the possibility of mandatory abstention here. *See* 28 U.S.C. § 1334(c)(2) ("Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, *with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section*. . .") (emphasis added). As the quoted mandatory abstention provision indicates, mandatory abstention only applies if there would not be some other basis for federal jurisdiction, other than 28 U.S.C. § 1334. Here, the fortuitous fact of diversity (fortuitous for Defendants) makes mandatory abstention inapplicable.

The specific factors courts typically use to determine whether to abstain in their discretion or to grant remand on equitable grounds are substantially the same. *Barge v. Western Southern Life Insurance Co.*, 307 B.R. 541 (S.D.W.Va. 2004). Consequently, if discretionary abstention seems appropriate, the case should be remanded to the State Court. These factors are: (1) the effect or lack thereof on the efficient administration of the estate if the court recommends remand or abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4)

presence of related proceeding commenced in state court or other
non-bankruptcy proceeding; (5) jurisdictional basis, if any,
other than § 1334; (6) degree of relatedness or remoteness of
proceeding to main bankruptcy case; (7) the substance rather than
the form of an asserted core proceeding; (8) the feasibility of
severing state law claims from core bankruptcy matters to allow
judgments to be entered in state court with enforcement left to
the bankruptcy court; (9) the burden of the bankruptcy court's
docket; (10) the likelihood that the commencement of the
proceeding in bankruptcy court involves forum shopping by one of
the parties; (11) the existence of a right to a jury trial; (12)
the presence in the proceeding of nondebtor parties; (13) comity;
and (14) the possibility of prejudice to other parties in the
action.  *Searcy v. Knostman*, 155 B.R. 699, 710 (S.D. Miss. 1993);
*see also, P.O'B. Apollo Tacoma, L.P. v. TJX Companies, Inc.*, 2002
U.S. Dist. LEXIS 18702 (N.D. Tex 2002) *adopting Report and
Recommendation in P.O'B. Apollo Tacoma, L.P. v. TJX Companies (In
re: House2home),* 2002 Bankr. Lexis 962 (Bankr. N.D. Tex. 2002).

In analyzing these factors, the court notes the following:

(1) <u>The effect or lack thereof on the efficient administration of
the estate if the court recommends remand or abstention.</u>  This
court would be able to adjudicate the State Court Action fairly
quickly (within a couple of months, if the parties request it).
This court doubts that the State Court can move that quickly.  It
would be in furtherance of the efficient administration of the
estate for this matter to be resolved quickly.

(2) <u>Extent to which state law issues predominate over bankruptcy
issues.</u>  Admittedly there are more state law issues involved in

-28-

this litigation than anything else. However, it appears there is a major defense that this court could address more easily than the State Court (namely, the preclusive effect of the DIP Order).

(3) <u>Difficult or unsettled nature of applicable law.</u> Although the issues presented are mostly state law issues, these are not at all difficult state law issues. Bankruptcy courts deal with state law issues frequently.

(4) <u>Presence of related proceeding commenced in state court or other non-bankruptcy proceeding.</u> Not applicable. The State Court Action was commenced postpetition. Moreover, all related proceedings are in the bankruptcy court.

(5) <u>Jurisdictional basis, if any, other than § 1334.</u> It is unanimously agreed there is federal diversity jurisdiction in the matter. The action is going to be in federal court one way or another.

(6) <u>Degree of relatedness or remoteness of proceeding to main bankruptcy case.</u> This court considers these claims to be quite related to the underlying bankruptcy case and considers the Debtor likely to be a necessary party.

(7) <u>The substance rather than the form of an asserted core proceeding.</u> Not applicable - the matters are not "core."

(8) <u>The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.</u> Not applicable.

(9) <u>The burden of the bankruptcy court's docket.</u> This court is not overburdened. Moreover, unlike the State Court, this court has familiarity with the parties and the disputes.

(10) <u>The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.</u> This court believes that forum shopping is a likely possibility on the part of the Plaintiffs.

(11) <u>The existence of a right to a jury trial.</u> The court determines that Plaintiffs do indeed have the right to a jury trial. *Jennings v. McCormick,* 154 F.3d 542, 545 (5th Cir. 1998) (it is well settled that "the right to a jury trial is fundamental, and courts must indulge every reasonable presumption against waiver"); *In re Nu Van Tech., Inc.,* 2003 LEXIS 1331 (Bankr. N.D. Tex. 2003) (same). This court cannot preside over

the jury trial without the consent of all parties.  28 U.S.C. §
157(e).  An alternative motion for withdrawal of the reference
has been filed by Plaintiffs.  This court can and will, in light
of the jury trial request, recommend that the district court
withdraw the reference, to conduct a jury trial in this matter,
but that the bankruptcy court be allowed to preside over all pre-
trial matters which this court can very promptly address.

(12) <u>The presence in the proceeding of nondebtor parties.</u>  There
are nondebtor parties, but all have participated extensively in
the bankruptcy case and would appear not to be inconvenienced by
this or the district court forum.

(13) <u>Comity.</u>  As discussed, there are clearly mostly state law
issues involved in the State Court Action, but there is one
rather substantial federal law issue (possible estoppel or
preclusion with regard to the DIP Order).  Therefore, comity
perhaps weighs slightly in favor of a state law forum, but not
overwhelmingly.

(14) <u>The possibility of prejudice to other parties in the action.</u>
The court is presented with no evidence of prejudice to the
Plaintiffs of having their claims heard in a federal forum.

     Based on the above, this court does not believe that the

interest of justice or the interest of comity with state courts

weigh in favor of discretionary abstention or that there is any

other cause warranting equitable remand.

<u>E.  Motion to Withdraw the Reference.</u>

     As mentioned above, Plaintiffs have a right to a jury trial.

For that reason, this court will, in response to Plaintiffs'

alternative Motion to Withdraw the Reference, prepare a separate

Report and Recommendation to the District Court recommending that

the reference be withdrawn so that the district court may conduct

a jury trial.  However, the Report will recommend that all

pretrial matters and motions be heard by the bankruptcy court.

## V.
## CONCLUSION AND ORDER

Based upon the foregoing, the court concludes that the Plaintiffs' Motion to Remand and Abstain should be denied.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Plaintiffs' Motion to Remand and Abstain is DENIED.

### END OF MEMORANDUM OF OPINION AND ORDER ###